(53 Misc. Rep. 375.)

### LOZIER MOTOR CO. OF NEW YORK v. BALL et al.

(Supreme Court, Special Term, New York County.   March, 1907.)

INJUNCTION—ACTS RENDERING JUDGMENT INEFFECTUAL.

    The general superintendent and purchasing agent of a corporation, who was also part of the time a director therein, entered secretly into business with another as a partner in manufacturing material used by the corporation, and the firm did much work for the corporation, and finally sold its plant to it; the corporation giving its note for the price.   Thereafter, on discovering the relation of its superintendent to the firm, the corporation brought an action for an accounting of the profits made by the firm on the work for the corporation and for the cancellation of its notes.   *Held,* that it was entitled to an injunction pending the action to restrain defendants from transferring the notes and destroying the books of the firm, and forbidding any payment to such superintendent of any part of the price given for the plant.

Action by the Lozier Motor Company of New York against Charles P. Ball and George A. Burwell for an accounting. Motion for continuance of injunction pendente lite granted.

Keener, Lewis & Layng (William A. Keener, of counsel), for plaintiff.

Smith, Conway & Weed (Frank E. Smith, of counsel), for defendant Ball.

Weeds, Conway & Cotter, for defendant Burwell.

LEVENTRITT, J. The plaintiff is a corporation engaged in the manufacture of marine boats, motors, and automobiles at Plattsburg, N. Y. From about 1900 to September 17, 1906, the defendant Burwell was employed by the plaintiff under a 10-year contract as general superintendent and purchasing agent, and during a portion of that time, and up to October, 1904, was a member of its board of directors. Prior to 1903, the plaintiff experienced more or less difficulty in turning out finished work at its factory, and therefore had occasion to contract with outside shops. On January 1, 1903, the defendants formed the Ball Manufacturing Company, and established a plant at Stamford, Conn., for the purpose of manufacturing constructive parts and assembling automobiles and the like. The defendants were equal partners in the enterprise, each having invested the sum of $2,000. From the time of the formation of the Ball Manufacturing Company, all work of the plaintiff, which theretofore had been distributed among various outside shops, was sent, at the instance of the defendant Burwell, to the Ball Manufacturing Company. Down to July 10, 1906, that work amounted to about $150,000, and the charges therefor were approved by Burwell. Early in the summer of 1906 the plaintiff began negotiations with Ball for the purchase of the plant of the Ball Manufacturing Company, and this was consummated on July 10, 1906, when the plaintiff paid therefor in cash $15,411.17. At the same time it was agreed that there was a balance of $34,369.34 due from the plaintiff for work and materials. For that balance the plaintiff gave Ball its eight promissory notes. The amount paid for the plant was based upon an examination and report made by Burwell. A short time after the acquisition of the plant, the plaintiff discovered, upon an examination of certain books of the Ball Manufacturing Company, that Burwell had been a partner of that company since its inception and had shared equally in its profits with Ball. Thereupon the plaintiff instituted this action, primarily for an accounting by the defendants of the profits realized from the work done for the plaintiff by the Ball Manufacturing Company and of the amounts of such profits accruing to Burwell, now in the hands of either Burwell or Ball, for which judgment is prayed, and which it seeks to offset against the eight notes given to Ball. The right to equitable intervention is predicated upon allegations of Burwell's secret connection with the Ball Manufacturing Company; the conduct, concealment, and representations of the defendants, inducing the purchase by plaintiff of the plant of the Ball Company and the delivery of the promissory notes to Ball; inadequacy of plaintiff's remedy at law; and the defendants' irresponsibility. As

part of the relief sought, the plaintiff asks for the cancellation of the promissory notes delivered to Ball. This motion is made to enjoin (1) the negotiation or transfer of the notes and the institution of any action thereon; (2) the payment by Ball to Burwell of any part of the $15,411.17 cash consideration paid for the plant of the Ball Manufacturing Company; and (3) the destruction, during the pendency of this action, of the books or other records of the Ball Manufacturing Company.

The facts thus far detailed are practically undisputed. The plaintiff· asserts that Burwell's connection with the Ball Manufacturing Company was unknown to it until after the purchase of the plant; but the defendants insist that that fact was known from the outset to Henry A. Lozier, Sr., a former president of the plaintiff. Their story is that he, being the owner of more than two-thirds of the capital stock of the plaintiff, conceived the idea that a factory devoted to the outside work of the plaintiff should be started, and conducted, to some extent, at least, under his control; that he approached Ball with that project; that Ball did not have the requisite means; that he then suggested that Burwell should join Ball in the enterprise, which he encouraged by the promise that all the plaintiff's outside work would be entrusted to them; that the Ball Manufacturing Company was accordingly formed; and that Burwell merely fulfilled Lozier's promise by sending all the plaintiff's outside work to the Ball Manufacturing Company. The facts presented and the circumstances disclosed negative the defendants' story, and support the conclusion·that Burwell's connection with the Ball Manufacturing Company was never known to the plaintiff. The proof is convincing that Lozier never knew that Burwell was associated with Ball in the Ball Manufacturing Company. Burwell, in a letter to Lozier under date of December 18, 1902, some months after the alleged suggestion of the latter respecting the formation of the Ball Company, writes:

"Mr. Ball is starting a small machine shop, and I have tried to get him located down close to New York somewhere, and thought that he had everything fixed so that he could start in at Stamford, but just got a letter from him today saying that he cannot get accommodations. I want Ball somewhere where we can make use of him and his shop whenever we get pushed. There will be lots more satisfaction sending work to him than there is sending it to Garvin, as · he will have time to spend a lot of his personal attention on it, and when he was through with it the work would be done as well on it as we could do it here ourselves."

On December 31, 1902, Burwell wrote to Lozier:

"Mr. Ball is going to make our clutches, and will be able to help us out a great deal. He has probably got a year's lease of the shop at Stamford, but might be persuaded to locate at Westchester Creek or anywhere you put up the boat building. There is no question but what we can use him and his shop to good advantage, as he could afford to take on for work a lower figure than what we can get it done at Garvin's, and he would no doubt give us better value in everything he done, as he is a thorough mechanic."

Again on January 3, 1903, Burwell writes to Lozier:

"Regarding Mr. Ball, he has got located at Stamford, and is working for us, and if it is your wish to take up an oil engine there with him, I can arrange it so that this can be done; in fact, as I have told you in a letter several days

ago, we can use Ball and his shop perhaps altogether on our work, provided he does not get started on what he has arranged to make. If you make use of Ball and his shop, the work will have to be paid for about as fast as it is done, as he has got only a small amount of money, sufficient, he thinks, to do what he is starting out to do."

On April 7, 1903, Burwell writes to Lozier:

"There is another matter I must mention also, and that is that Regar (the plaintiff's treasurer) should be notified to pay Ball's bills promptly. I have discouraged him in taking up the work that he started in to do, and he is depending on us entirely just at present, and will be for the next six or eight months, as he cannot get any too many good men in his shop to get the automobile through in time this summer. Kindly let me know if I am carrying out your wishes in this matter, and at the same time settle with Regar regarding paying Ball's bills. Ball writes me this morning that he is short of money and that our company is now owing him in the neighborhood of $500 for the clutches and tools, and that his bills are in for them, and that he needs the money to keep up his pay roll."

Burwell's letters thus attest the truth of the plaintiff's contention and contradict his own. They point not only to Lozier's ignorance of the membership of the Ball Manufacturing Company, but indicate a studious attempt to prevent the acquisition of knowledge. Not only did the defendants keep Lozier ignorant of their secret arrangement, but they adopted and pursued a general course of concealment, lest the fact of their association might reach the plaintiff. On January 26, 1903, Burwell, on behalf of the plaintiff, in response to an inquiry made of it regarding the financial responsibility of the Ball Manufacturing Company, writes:

"We have yours of the 17th. Referring to the Ball Manufacturing Company, would say that we are well acquainted with Mr. Ball; he formerly having charge of the Thompsonville plant of the Lozier Manufacturing Company. The writer does not hesitate to recommend him to you as being perfectly trustworthy. We are sending the company considerable work, but do not know anything regarding their financial matters. Our acquaintance with Mr. Ball, however, is such that we are firmly of the opinion that he would order only such goods as he is well able to pay for."

On February 26, 1903, Burwell writes to Ball, concerning an employé of the Ball Company:

"I told him in New York that I had nothing whatever to do with your business, and that he was there subject to your authority, and could only stay as long as he gave you satisfaction. * * * You might give him to understand that my influence would not keep him the position for an hour if he does not suit you. It is to my advantage to have him understand that I am not interested in your business at all."

If the plaintiff knew of the relation between Burwell and Ball, there was no object in withholding the knowledge from the public. There could be no motive in maintaining the secrecy of their arrangement, except in their dealings with the plaintiff. If, then, as they maintain, the plaintiff had knowledge, why were the facts so cautiously kept from others? The correspondence is conclusive of the purpose for which the Ball Company was formed and the object of the defendants in keeping Burwell's interest secret. The purpose was to secure the outside work of the plaintiff, and the object of secrecy was to enable Burwell to provide that work unhampered by any apparent interest.

The fact that Ball agreed to assume the management and operation of the plant is strongly suggestive of an agreement on Burwell's part to provide the plant with work from the plaintiff's factory.  Furthermore, if, as alleged, Lozier knew of Burwell's partnership relations, it is significant that he never communicated the fact to either of his sons, who were interested with him in the plaintiff corporation, or to any person connected therewith, and that, after Lozier's death, which occurred in May, 1903, neither Burwell nor Ball disclosed their business relations to any one connected with the plaintiff.

But the defendants insist that even if the plaintiff had no knowledge of the partnership, nevertheless it cannot maintain this action.  They assert that Burwell retired from the Ball Manufacturing Company in September, 1904, at which time the amount of his investment was returned to him, and that he retained merely a one-half interest in the machinery; that at that time Burwell's participation in the profits ceased, and that thereafter Ball was the sole owner of the business of the Ball Manufacturing Company; that, upon the sale of the plant, Ball paid Burwell $11,000 as his share of the consideration realized; and, further, that Burwell has no claim upon the notes.  There is a significant silence respecting the manner in which the payment was made, no written evidence of the payment is presented, there is no indication that such evidence exists, and no reason is suggested why Burwell should have received $11,000 out of the $15,000 realized for the plant, when admittedly he had but a half ownership.  I am satisfied that the copartnership was continuous and in existence when the plant was sold in 1906.  There was no dissolution agreement; no advertised notice; no action taken by Burwell to protect himself from future debts of the firm; none of the steps usually adopted by a retiring partner were followed; in fact, there is nothing indicating a dissolution beyond the statements of the defendants that Burwell "withdrew," that his investment was returned, and that he retained only a half interest in the machinery.  Such statements are refuted, however, by the relations which continued after Burwell's alleged withdrawal. In the subsequent correspondence between the defendants the business of the Ball Manufacturing Company was referred to as "our business."  Nothing was done by Ball even with respect to the minor details of the business without first consulting Burwell.  Letters from the plaintiff to the Ball Manufacturing Company were referred by Ball to Burwell for reply.  The report of a mercantile agency dated November 17, 1905, contains the statement, "Charles P. Ball has always been disinclined to say who was interested with him in the business."  In a memorandum of agreement, dated January 1, 1905, witnessed, but unexecuted, we find the following prefatory statement:

"Whereas, Charles P. Ball, hereinafter known as party of the first part, and G. A. Burwell, hereinafter known as party of the second part, are equal and sole owners of the property and business now being carried on at Stamford, Conn., and known as the Ball Manufacturing Company, are desirous of continuing as equal partners."

And, finally, in a letter to one H. C. Williamson, in April, 1906, relating to a contemplated change of site, Ball writes:

"Within a few days I have seen my partner in regard to the property which you have at Norwich, and he thinks it is too far from New York for our business, and from what he says I am inclined to agree with him."

These facts are incompatible with a dissolution in 1904. All the facts and circumstances disclosed upon this motion support the right of the plaintiff to maintain the action and point to probable success. Any profits received by Burwell from the Ball Manufacturing Company were acquired by virtue of his position either as agent or director of the plaintiff, and whatever he secured in that manner belongs to the plaintiff. An agent will not be permitted to make a profit out of the authority conferred upon him by, and withhold the advantage from, his principal. Sheridan v. Sheridan Electric Light Co., 38 Hun (N. Y.) 396; Dutton v. Willner, 52 N. Y. 312; Wardell v. Railroad Co., 103 U. S. 651, 26 L. Ed. 509. The relation between a director and the corporation he represents is that of trustee and cestui que trust. Butts v. Wood, 37 N. Y. 317; Bliss v. Matteson, 45 N. Y. 22; Brinckerhoff v. Bostwick, 88 N. Y. 52. Like every other trustee or agent, he cannot, in acting on behalf of the corporation, secure or reserve to himself any advantage or benefit. Koster v. Pain, 41 App. Div. 443, 58 N. Y. Supp. 865. The law will not tolerate any act which tends to bias the conduct of an agent in his duty to his principal, and every advantage secured or profit gained by the former belongs, not to him, but to his principal. And, where an agent or a director has from his dealing with the property or affairs of the corporation received profits not common to the stockholders of the corporation, he must account therefor.

Applying these principles to the facts as analyzed on this motion, and in view of the failure of the defendants to controvert allegations of irresponsibility, the plaintiff is entitled to equitable protection in the form of an injunction, which affords the only complete safeguard against the possibility of an ineffectual decree. The motion for a continuance of the injunction pendente lite will be granted, upon the plaintiff filing a bond in the sum of $40,000 to secure the payments of the notes held by the defendant Ball, with interest, in the event of the plaintiff's nonsuccess, or of such part of the amount thereof as may be determined to be due to the defendant Ball upon an accounting.

Ordered accordingly.